CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 27 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SPENCER L. STACEY, ) | |
| Plaintiff, ) | Civil Action No. 7:08cv000437 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GENE JOHNSON, et al., ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

Plaintiff Spencer L. Stacey, a Virginia inmate proceeding pro se, brings this action under 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Stacey, who is Muslim, alleges that the defendants violated his constitutional rights by serving him pork on one occasion and seeks $20,000 to $30,000 in damages. Upon review of the record, the court finds that Stacey has not stated a claim upon which relief can be granted and, therefore, dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Stacey alleges that on April 10, 2008, he was served a meal tray which contained pork. Stacey questioned the pork tray and indicated that he was Muslim and, therefore, could not eat pork. Defendant Officer King allegedly informed Stacey that he was not on list of inmates who were eligible to receive non-pork meals and, therefore, could take the meal tray with pork or not. Stacey states that he and King went back and forth over whether Stacey was eligible and whether he should take the pork tray. Ultimately, King apparently reported Stacey for threatening him and Stacey was taken to the segregation unit. Stacey concedes, and the grievances responses indicate, that he was not on the list of non-pork eligible inmates and that he was removed from the list on August 31, 2005 per his own request. Further, grievances responses indicate that his name was put on the list of

eligible inmates less than five days after the incident about which he complains.

## II.

A prisoner retains his federal constitutional right to freedom of religion and prisoners must be afforded "reasonable" opportunity to practice their religion. Cruz v. Beto, 405 U.S. 319, 322 (1972). Although inmates may be entitled to a pork-free diet in conformance with religious beliefs, Ross v. Blackledge, 477 F.2d 616, 618-19 (4th Cir. 1973), the prison need not provide a special diet and/or food substitute to an inmate if the inmate can meet his religious constrictions by simply choosing not to eat items which do not conform to his religious beliefs and still maintain a nutritionally adequate diet, Abernathy v. Cunningham, 393 F.2d 775, 778 (4th Cir. 1968). Stacey has not alleged that had he refrained from eating the pork product served on that one occasion, his diet would have been nutritionally inadequate. Furthermore, Stacey concedes that he was not on the list of non-pork eligible inmates per his own request. Accordingly, the defendants' failure to provide a special tray or pork substitute does not amount to a constitutional violation. See Cross v. Va. Beach Corr. Ctr., 865 F.2d 1257 (4th Cir. 1989) (finding that the negligent failure to provide a pork substitute or special diet when the inmate could maintain a nutritionally adequate diet by simply refraining from eating the pork product did not present a claim of constitutional magnitude); Frost v. Illes, No. 8:04-0943-17B1, 2005 U.S. Dist. LEXIS 41938, 2005 WL 3981680 at *5 (D.S.C. Mar. 23, 2005) (finding that Muslim detainee's First Amendment rights were not violated by failing to serve him a substitute meal on days pork products were served), aff'd, 144 Fed.Appx. 362 (4th Cir. 2005), cert. denied, 546 U.S. 1186 (2006); Abdullah v. O'Brien, Civ. A. No. 7:07cv0040, 2007 U.S. Dist. LEXIS 36901, 2007 WL 1472785 at *5 (W.D. Va. May 21, 2007) (finding that the provision of bacon to an inmate known to practice the Islamic faith did not present a claim of constitutional

2

magnitude as there was no evidence the inmate had been approved for or even applied for a non-pork diet nor that the named defendants were responsible for determining what food products were served).

### III.

To the extent Stacey's allegations could be construed as a claim that his confinement in segregation constitutes a violation of his due process rights afforded under the Fourteenth Amendment, it fails. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). However, in Wilkinson v. Austin, 545 U.S. 209 (2005), the Court found that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished the supermax facilities from normal segregation

units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." Wilkinson, 545 U.S. at 214. Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." Id. Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the facility. Id. at 215. After noting other onerous conditions of confinement, including that the cells were lighted 24 hours per day, the court stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224. In this case, while the conditions of Stacey's placement in the segregation unit at Wallens Ridge State Prison may have been more restrictive than those applied to inmates in the general population, Stacey has not alleged that they were nearly so restrictive and atypical as those at issue in Wilkinson. Therefore, the court finds that Stacey's allegations regarding his assignment to the segregation unit fail to state a due process claim.

## IV.

Based on the foregoing, the court finds that Stacey has not presented any claims that constitute a violation of his constitutional rights and, therefore, dismisses his complaint.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to plaintiff.

ENTER: This 27th day of August, 2008.

United States District Judge